In the Matter of JYASHIA RR. and Another, Children Alleged to be Permanently Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JOHN VV., Appellant. [938 NYS2d 645]—

Spain, J.P.

The threshold inquiry in any permanent neglect proceeding is whether the agency has established by clear and convincing evidence that, despite its diligent efforts to encourage and strengthen the parental relationship, a parent has failed for a period of at least one year to plan for his or her children's future, although able to do so (*see* Social Services Law § 384-b [7]; Family Ct Act § 614; *Matter of Star Leslie W.*, 63 NY2d 136, 142 [1984]). "[A]n agency fulfills its obligation by offering the appropriate services and encouraging participation; clearly, however, the agency cannot guarantee that a parent will be successful" (*Matter of Sadie K.*, 249 AD2d 640, 641 [1998]). "Indeed, an agency that has embarked on a diligent course but faces an utterly un-co-operative or indifferent parent should nevertheless be deemed to have fulfilled its duty" (*Matter of Sheila G.*, 61 NY2d 368, 385 [1984]), especially where the parent is difficult to contact and unwilling to change his or her behavior (*see Matter of Willard L.*, 23 AD3d 964, 965 [2005], *lv denied* 6 NY3d 708 [2006]).

Here the record reflects that petitioner referred respondent to a number of services, including a psychological evaluation, mental health counseling and parenting programs. Additionally, respondent was assigned a caseworker to assist with the skills he needed to regain custody of the children, and a family worker who supervised his weekly visitation and demonstrated appropriate parenting skills. Petitioner provided periodic service plan reviews and family team meetings. Although respondent asserts that petitioner failed to take the initiative to find and send him to a new mental health counseling program in June 2009, when he maxed out of a short-term (14-month) local counseling program, he took no responsibility for his failure to follow the recommendation of his counselor that he "seek out additional therapy with a new therapist in the community." He neither sought out a follow-up program on his own nor asked petitioner for assistance in finding a new program.

The record supports Family Court's conclusion that, although respondent participated in most of the services and programs provided, he did not meaningfully benefit from them and was often not cooperative with petitioner, believing from the beginning that the children had been wrongfully removed. Petitioner

had difficulty contacting respondent by phone or by mail after the children were removed, and respondent rarely contacted the caseworker and refused to provide accurate information as to where and with whom he lived and worked. Moreover, despite a Family Court mandate that he find suitable housing for the children, it was almost a full year before respondent finally obtained a residence and began the process of having it approved for home visitation. While respondent disputed key parts of the testimony offered by petitioner, Family Court's factual findings reflect that its credibility determinations favored the evidence and testimony presented by petitioner, and we give deference to the court's credibility assessments (*see Matter of Maelee N.*, 48 AD3d 929, 930 [2008], *lv denied* 10 NY3d 709 [2008]; *Matter of Alijah XX.*, 19 AD3d 770, 771 [2005]). On the record before us, we find that petitioner established by clear and convincing evidence that it provided appropriate services and made diligent efforts to reunite respondent with his children.

Once petitioner established its threshold diligent efforts, the inquiry turns to whether petitioner established that respondent failed—for a period of more than a year—to "substantially and continuously or repeatedly . . . maintain contact with or plan for the future of the child, although physically and financially able to do so" (Social Services Law § 384-b [7] [a]; *see* Family Ct Act § 614 [1] [d]). Notably, " 'contact and planning are alternative elements, and proof of failure to perform one [of these elements] is sufficient to sustain a finding of permanent neglect' " (*Matter of Shannon U.*, 210 AD2d 752, 754 [1994], *lv denied* 85 NY2d 807 [1995], quoting *Matter of Scotty C.*, 154 AD2d 784, 786 [1989], *lv denied* 75 NY2d 707 [1990]).

As further evidence of respondent's failure to cooperate and resistence to and failure to benefit from the services and assistance provided, he frequently arrived late for visitation, disappointing the children and cutting short the scheduled visit, and failed to properly supervise the children or respond appropriately to their needs. In addition, because he failed to provide a suitable residence at which the children could visit during the first year after their removal, visitation had to take place at petitioner's offices, playgrounds, restaurants and a local "Y." When respondent finally acquired a home in June 2009, petitioner's inspection of the house for approval was impeded because respondent first gave petitioner the wrong address; later, when petitioner's caseworker appeared at the correct address for the initial inspection in July 2009, the electricity had not yet been activated, the cupboards were almost bare, and all

indications were that respondent was not actually residing there, precluding approval of the residence. Even after home visits were ultimately approved and ongoing, respondent refused an opportunity to expand the one-hour weekly visits, citing his long work hours. Further, when he was offered the option of weekend visits supervised by a friend or family member—if he could recruit a person found to be suitable by petitioner—respondent said that he would consider that option, but never followed up with petitioner. Although respondent knew where his older child was attending school, he made no effort to engage in parent meetings and activities or to inquire of her progress from the foster parents. Despite the parenting programs he attended and the efforts of the caseworkers and the family worker who supervised visitation, respondent continued to have difficulty with his supervision of the children. In addition, he did not progress to a point where he could manage them safely, even for a short period of time, failing to show any real insight into the circumstances which led to their removal.[2] On the record before us, we find ample support for Family Court's conclusion that respondent, despite the diligent efforts of petitioner, failed to adequately plan for the future of his children.

We also conclude that the order terminating his parental rights and freeing the children for adoption has a sound and substantial basis in the record and is in their best interests (see *Matter of Star Leslie W.*, 63 NY2d at 148). Testimony at the dispositional hearing amply established that respondent, who then faced possible eviction from his home, made little or no progress in planning for the children. The children, who were with the same foster parent—who intended to adopt them—for the entire period of their removal, were, with few exceptions, thriving and getting the services they needed.

Malone Jr., Stein, McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.

---

2. Notably, although he was referred to a special parenting program for infants and toddlers, respondent attended only two out of the six sessions offered by the program.