■ In the Matter of JESSICA U. et al., Alleged to be Permanently Neglected Children. CHEMUNG COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; STEPHANIE U., Appellant. [59 NYS3d 195]—

Mulvey, J. Appeal from an order of the Family Court of Chemung County (Hayden, J.), entered January 25, 2016, which partially granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate five of the subject children to be permanently neglected, and terminated respondent's parental rights as to Jaylah U., Jamal U. and Julie U.

Respondent is the biological mother of six children born between 2000 and 2014: Jessica U. (born in 2000), Justine U. (born in 2005), Jacobryan U. (born in 2007), Julie U. (born in 2009), Jamal U. (born in 2011) and Jaylah U. (born in 2014).[1] Respondent, who has been involved with petitioner since the birth of the oldest child in 2000 and more intensively since 2011, consented to findings of neglect as to the five oldest children in 2011, including Jamal after he was born in 2011. The children were removed from respondent's care and custody and gradually transitioned back to residing with respondent in 2012 but, in early 2013, were again removed and placed in petitioner's care pursuant to an amended neglect petition; the children, with the exception of the oldest, have remained in petitioner's care and custody since 2013. In 2014, after the birth of Jaylah, a finding of derivative neglect was made as to her. Petitioner commenced this permanent neglect proceeding

---

1. The record reflects that the fathers of four of the subject children are unknown (Jessica, Jacobryan, Jamal and Jaylah), the father of Julie surrendered his parental rights during a prior proceeding in 2014 and the father of Justine was incarcerated.

in 2015² seeking to terminate respondent's parental rights alleging that, despite its extensive efforts over the course of many years, respondent has failed for a period of more than one year to substantially and continually or repeatedly plan for the children's future, has been resistant to petitioner's efforts and failed to follow or benefit from treatment, services and programs.

In December 2015, following a lengthy fact-finding hearing, Family Court returned the oldest child, then age 15, to respondent's care and made findings of permanent neglect as to the other five children. After a dispositional hearing, the court ordered a one-year suspended judgment with respect to Justine and Jacobryan,³ terminated respondent's parental rights as to the three youngest children—Julie, Jamal and Jaylah—and issued orders of protection that barred respondent from contacting them. Respondent now appeals, challenging the finding of permanent neglect as to the five children and the termination of parental rights as to the three youngest children.

Social Services Law § 384-b (7) (a) defines a permanently neglected child as a child who is in the care of an authorized agency and whose parent has failed, for a period of more than one year following the date such child came into the care of an authorized agency, substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship (*see Matter of Star Leslie W.*, 63 NY2d 136, 140 [1984]). Where, as here, petitioner seeks to terminate parental rights on the ground of permanent neglect, it must "establish, by clear and convincing evidence, that it has made diligent efforts to encourage and strengthen the parent's relationship with the children" (*Matter of Alexander Z. [Jimmy Z.]*, 149 AD3d 1177, 1178 [2017]; *see* Social Services Law § 384-b [7] [a]; *Matter of Hailey ZZ. [Ricky ZZ.]*, 19 NY3d 422, 429 [2012]). "To satisfy this duty, [the agency] must make practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child[ren]'s progress and develop-

---

2. A prior permanent neglect petition was dismissed in 2014, following a fact-finding hearing.

3. The disposition as to Justine and Jacobryan was based upon, among other findings, their "oppositional, defiant, explosive, impulsive [and] difficult to control" behavioral problems and histories, which led Family Court to conclude that their chances for adoption were "poor."

ment, and offering counseling and other appropriate educational and therapeutic programs and services" (*Matter of Carter A. [Courtney QQ.]*, 121 AD3d 1217, 1218 [2014] [citations omitted]).

Contrary to respondent's claims, petitioner demonstrated that it made diligent efforts to address her many problems that led to the children's removal, and to encourage and strengthen their relationships. Indeed, as Family Court aptly noted, petitioner offered an "astounding" array of services dating back to 2011 (and earlier) and during the year preceding this petition, including numerous referrals for mental health and family counseling, a variety of parenting classes addressing skills with regard to different aged children and their behavioral problems and regular visitation assistance. Respondent was supplied with multiple forms of transportation support, and petitioner arranged assistance with housing, household management, phone service, school enrollment and obtaining medical care, as well as medication management and safety and fire prevention plans and support. Household cleaning and safety training, psychological testing, protective parenting programs and domestic violence training were made available. Respondent received training to support her need to co-parent with foster parents and to build her skills to ensure that inappropriate persons were not in the home, and was provided day care referrals, respite care, counseling after violent altercations with the oldest child and communication building assistance. Respondent was also afforded special programs to address the serious behavioral and emotional problems of several of the children, and sometimes refused to sign the necessary consent forms for their treatment or medication. Testimony was offered by caseworkers, social workers, program providers, visitation supervisors, court-appointed special advocates, family counselors and mental health service providers, all establishing that respondent was repeatedly offered abundant services, support, education and programs to address her parental shortcomings and the needs of her children.

The record reflects that virtually every aspect of respondent's parenting, household and children's problems was addressed using a variety of approaches, programs and providers that were appropriately tailored to her needs and circumstances. While respondent did not appreciably benefit from or meaningfully improve following these efforts, petitioner was obligated to "only make reasonable efforts, and it will be deemed to have fulfilled its obligation if appropriate services

are offered but the parent refuses to engage in them or does not progress" (*Matter of Everett H. [Nicole H.]*, 129 AD3d 1123, 1126 [2015] [internal quotation marks and citation omitted]; *see Matter of Sheila G.*, 61 NY2d 368, 385 [1984]). Accordingly, we find that Family Court's threshold determination that petitioner discharged its duty to make diligent efforts is fully supported by the record (*see Matter of Alexander Z. [Jimmy Z.]*, 149 AD3d at 1178-1179; *Matter of Aniya L. [Samantha L.]*, 124 AD3d 1001, 1004 [2015], *lv denied* 25 NY3d 904 [2015]).

We are similarly unpersuaded by respondent's argument that petitioner never proved that she failed to plan for the future of her children (*see* Social Services Law § 384-b [7] [a]). In determining whether respondent planned for the future of her children, the relevant inquiry is whether she took "such steps as [were] necessary to provide an adequate, stable home and parental care for the child[ren] within a period of time which [was] reasonable under [her] financial circumstances[, and whether her plan was] realistic and feasible," mindful that "good faith effort [is] not, of itself, . . . determinative" (Social Services Law § 384-b [7] [c]). Further, "the court may consider [respondent's] failure . . . to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available" (Social Services Law § 384-b [7] [c]). Importantly, while respondent maintained contact with the children and attended or completed countless offered services and supervised visits, "[m]ere participation in classes and programs is not enough to meet this requirement when a parent does not benefit from the services[, programs and support] offered and utilize the tools or lessons learned in those classes in order to successfully plan for the child[ren]'s future" (*Matter of Aniya L. [Samantha L.]*, 124 AD3d at 1004 [internal quotation marks and citation omitted]). To that end, Family Court noted that, even after years of extensive services during which the children were in and out of foster care since 2011, "very little has changed in . . . respondent's life over the last few years." The record reflects that she had not made sufficient progress to permit the safe return of the five younger children to her care and custody or even to appropriately manage the children during supervised visitations. Respondent continued to be periodically combative, hostile and uncooperative with petitioner and service providers who were trying to educate and support her and her children; she also lacked insight into appropriate behavior around her children, was sometimes violent or made threats during visitations and failed to place the needs of her children above her own anger and resentment of providers. Respondent also periodically at-

tempted to undermine petitioner's efforts and engaged in harmful, unsafe and counterproductive behaviors with the children.

In the end, the myriad, serious problems that caused the removal of the children—such as the unsafe and chaotic home environment, her inability to appropriately parent and nurture the children, her noncompliance and lack of cooperation, her failure to learn how to manage the children and her household as well as her inability or unwillingness to accept responsibility for her children or her own detrimental, unstable behavior and to modify it—remained and had not substantially or meaningfully improved. Due to this failure to plan or progress and the ongoing concerns about the safety and well-being of the children, respondent never graduated from supervised visitation to unsupervised with any of the five younger children. While respondent offered a plan to regain custody of all of her children, it was woefully inadequate and unrealistic given her lack of progress and the children's acute needs. Contrary to her contention on appeal, Family Court properly cited a 2013 psychological report in the court files indicating that respondent's "mental health issues are the largest influence on her functioning, including poor judgment, poor interpersonal relationships, and inability to modulate her emotions." Notably, the court did not base its decision on this report, but appropriately took it into consideration given respondent's refusal to submit to a psychological evaluation or consider proposed treatment until the eve of the dispositional hearing. In short, the record supports the conclusion that respondent failed to benefit from the services provided to her or to address the issues that caused the children's removal and, thus, that she failed to plan for their future (*see Matter of Alexander Z. [Jimmy Z.]*, 149 AD3d at 1179; *Matter of Aniya L. [Samantha L.]*, 124 AD3d at 1005). As the court's determination adjudicating the five younger children (Justine, Jacobryan, Julie, Jamal and Jaylah) to be permanently neglected is supported by clear and convincing evidence, it is sustained.

Finally, Family Court did not improvidently terminate respondent's parental rights to the three youngest children (Julie, Jamal and Jaylah). "Following an adjudication of permanent neglect, the sole concern at a dispositional hearing is the best interests of the child[ren] and there is no presumption that any particular disposition, including the return of [the] child[ren] to [the] parent, promotes such interests" (*Matter of Alexander Z. [Jimmy Z.]*, 149 AD3d at 1180 [internal quotation marks and citation omitted]; *see* Family Ct Act § 631). While respondent argues that the court abused its discretion in not

finding that a suspended judgment was in the best interests of the three youngest children, we cannot agree. "The purpose of a suspended judgment is to provide a parent who has been found to have permanently neglected his or her child[ren] with a brief grace period within which to become a fit parent with whom the child[ren] can be safely reunited" (*Matter of Aniya L. [Samantha L.]*, 124 AD3d at 1005 [internal quotation marks and citations omitted]; *see* Family Ct Act § 633). The record of the dispositional hearing simply fails to support the finding that a brief grace period would lead to the necessary improved parenting and a safe reunification with respondent for any of the three children or, more to the point, that it would be in their best interests.

At the time of the dispositional hearing, respondent had not even progressed to unsupervised visitation with any of the three children. With regard to the youngest, Jaylah, she has resided primarily in a preadoptive home since shortly after her birth, where she is well cared for, thriving and attached to the only parents and family with which she has lived and known. Likewise, Julie and Jamal, who have spent little time in their young lives in the care and custody of respondent, are bonded with and have adapted well to their respective preadoptive foster families, who intend to adopt them if given the opportunity. As Family Court emphasized, their preadoptive homes offer them a chance at "success and good health, both physical and, more importantly, emotional." "Viewing the record as a whole and according the appropriate deference to Family Court's factual assessments and choice among dispositional alternatives, we find a sound and substantial basis for its determination that termination of respondent's parental rights [with regard to Julie, Jamal and Jaylah] was in their best interests" (*Matter of Aniya L. [Samantha L.]*, 124 AD3d at 1006; *see Matter of Star Leslie W.*, 63 NY2d at 147-148; *Matter of Bayley W. [Patrick K.]*, 146 AD3d 1097, 1100-1101 [2017], *lv denied* 29 NY3d 907 [2017]). Respondent's remaining contentions have been considered and determined to lack merit.

Peters, P.J., Garry, Egan Jr. and Rose, JJ., concur. Ordered that the order is affirmed, without costs.