Matter of Isabella H. (Richard I.) (2019 NY Slip Op 05352)





Matter of Isabella H. (Richard I.)


2019 NY Slip Op 05352


Decided on July 3, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 3, 2019

526342

[*1]In the Matter of ISABELLA H., Alleged to be a Permanently Neglected Child. TIOGA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; RICHARD I., Appellant.

Calendar Date: June 7, 2019

Before: Egan Jr., J.P., Lynch, Mulvey, Devine and Rumsey, JJ.


Sarah E. Cowen, Sidney, for appellant.
Tioga County Department of Social Services, Owego (Christian Root of counsel), for respondent.
Alena E. Van Tull, Binghamton, attorney for the child.



MEMORANDUM AND ORDER
Egan Jr., J.P.
Appeals from a decision and two orders of the Family Court of Tioga County (Keene, J.), entered September 28, 2017, October 13, 2017 and February 2, 2018, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent's parental rights.
The subject child (born in 2013) was removed from the mother's care when she was three months old and placed in foster care [FN1]. Thereafter, respondent, who was incarcerated, learned that he might be the child's father and, in August 2014, his paternity was established in a paternity proceeding. Respondent then became involved with petitioner and disclosed his lengthy history of substance abuse and his various mental health diagnoses. Petitioner attempted to engage respondent in services, but respondent continued to participate in criminal activity and was jailed from February 2015 through July 2015 and from December 2015 through April 2016. In February 2016, during respondent's second period of incarceration, petitioner commenced this permanent neglect proceeding to terminate respondent's parental rights. Following a fact-finding hearing, Family Court made findings of permanent neglect and granted petitioner's application. [*2]After a dispositional hearing, the court terminated respondent's parental rights and freed the child for adoption. Respondent appeals.[FN2]
When an agency seeks to terminate parental rights on the basis of permanent neglect, it must, as a threshold matter, prove by "clear and convincing evidence that it made diligent efforts to encourage and strengthen the parent-child relationship" (Matter of Zyrrius Q. [Nicole S.], 161 AD3d 1233, 1233-1234 [2018], lv denied 32 NY3d 903 [2018]; Matter of Cordell M. [Cheryl O.], 150 AD3d 1424, 1425 [2017]). This requires that the agency "make practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child['s] progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Alexander Z. [Jimmy Z.], 149 AD3d 1177, 1178 [2017] [internal quotation marks, brackets and citations omitted]; see Matter of Jace N. [Jessica N.], 168 AD3d 1236, 1237 [2019], lv denied 32 NY3d 918 [2019]; Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d 1077, 1077 [2018]).
The barriers to reunification, as testified to by both respondent and a caseworker, were respondent's mental health issues, substance abuse, housing instability and history of frequent criminal activity. In September 2014, after respondent was adjudicated to be the child's father, petitioner put together a service plan that included mental health evaluation and treatment, drug and alcohol evaluation and treatment and parenting classes, as well as conditions that respondent have stable housing for at least six months and refrain from criminal activity. Notwithstanding the availability of such services and the comprehensive nature of the service plan, respondent did little to engage in such services, which he blames on the fact that petitioner did not offer him financial assistance and made visitation difficult. This contention, however, is belied by the record. Respondent initially went for a substance abuse evaluation at a facility near his home in neighboring Chemung County; however, treatment at that facility proved cost prohibitive because that facility did not accept his insurance. When petitioner learned of this issue, caseworkers helped locate a facility in Tioga County that would accept respondent's insurance and provided him with a bus pass to get to treatment there. Although the bus was disagreeable to respondent and he elected not to utilize the bus pass, it was nevertheless made available to him so that he could access treatment and other services. Additionally, petitioner arranged for the Department of Social Services in Chemung County to help coordinate services near respondent's home. Caseworkers from both counties regularly met with petitioner to monitor his progress and provided him various assistance, including help with budgeting, which revealed that, after paying his bills, respondent had more than $300 each month in discretionary income. The Chemung County caseworkers testified that they made regular home visits to respondent and that, although some of his living situations were acceptable, others were not. They also noted that he moved around frequently — living in multiple apartments over a period of only a few months.
Contrary to respondent's contention, petitioner also facilitated regular visitation with the child. At first, respondent had friends that, in exchange for gas money, drove respondent to visits. When respondent began having trouble making these payments to his friends, petitioner provided him with gas cards. Later, respondent's friends were not always able to drive him or tolerate his erratic behavior, and he began to miss visits. Similarly, the quality of the visits deteriorated over [*3]time. Respondent became defensive when caseworkers offered coaching, made unusual and inappropriate comments to the caseworkers and refused to utilize the resources provided by the caseworkers. Despite such issues, petitioner attempted to continue visitation when respondent was incarcerated, but after attempting four visits, which went poorly and were extremely upsetting to the child, petitioner discontinued the visits. In these circumstances, we find respondent's argument that petitioner failed to accommodate his unique needs and did not encourage visitation to be unavailing. Petitioner "was obligated to only make reasonable efforts, and it will be deemed to have fulfilled its obligation if appropriate services are offered but the parent refuses to engage in them or does not progress" (Matter of Everett H. [Nicole H.], 129 AD3d 1123, 1125-1126 [2015] [internal quotation marks and citation omitted]; see Matter of Paige J. [Jeffrey K.], 155 AD3d 1470, 1474-1475 [2017]). Accordingly, we find ample support in the record that petitioner discharged its duty to make diligent efforts to encourage and strengthen respondent's relationship with the child (see Matter of Logan C. [John C.], 169 AD3d 1240, 1242-1243 [2019]; Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1003-1004 [2017]).
Having met this threshold burden, the inquiry turns to whether petitioner proved by clear and convincing evidence that respondent failed to plan for the child's future (see Matter of Timothy GG. [Meriah GG.], 163 AD3d 1065, 1070 [2018], lvs denied 32 NY3d 908 [2018]). Planning for the child's future means "to take such steps as may be necessary to provide an adequate, stable home and parental care for the child within a period of time which is reasonable under the financial circumstances available to the parent" (Social Services Law § 384-b [7] [c]). As relevant to whether a parent has so planned, "the court may consider the failure of the parent to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent" (Social Services Law § 384-b [7] [c]; see Matter of Kapreece S. [Latasha SS.], 128 AD3d 1114, 1115-1116 [2015], lv denied 26 NY3d 903 [2015]; Matter of Samuel DD. [Margaret DD.], 123 AD3d 1159, 1162 [2014], lv denied 24 NY3d 918 [2015]).
During the relevant time period, respondent completed a parenting class, but continued to struggle with his parenting skills. Several caseworkers testified that he was disengaged during visitations, resistant to coaching, unable to assess and respond to the child's needs and disparaged the child's mother and the caseworkers in front of the child. Respondent also failed to address his mental health and substance abuse issues. Respondent underwent a substance abuse evaluation in October 2014 and was diagnosed as alcohol and cocaine dependent. Although, at the time, he claimed that he had not had any alcohol in one month or any cocaine in 18 months, he refused a drug test. One caseworker testified that respondent often insisted that he did not need drug or alcohol treatment, but that she suspected that he was using drugs because he continued to engage in criminal activity and, during one arrest, was charged with criminal possession of a controlled substance. Respondent's friend also testified that he suspected that respondent was using drugs because, in early 2015, a mutual acquaintance reported seeing respondent at a house where drugs were sold and, when the friend drove respondent to visits with the child, respondent confessed that he wanted to use crack cocaine and stated that he knew where he could get some. Respondent denied these allegations, but admitted that he did not engage in drug or alcohol treatment. Respondent also admitted that he was not engaged in mental health treatment and had discontinued his medication.
Additionally, when he was not incarcerated, respondent moved around frequently and did not always keep petitioner informed of his whereabouts. According to one caseworker, she lost contact with respondent in October 2015 and, despite calling and sending letters, she was unable to locate him until December 2015, when she learned that he was in jail. Given that respondent did not complete substance abuse or mental health treatment, downplayed or refused to acknowledge the severity of his substance abuse problem and mental health diagnoses, continued to engage in criminal behavior, did not improve his parenting skills and did not comply with the conditions set out by petitioner, we find that respondent failed to plan for the child's future (see Matter of Timothy GG. [Meriah GG.], 163 AD3d at 1071; Matter of Alexander Z. [Jimmy Z.], 149 AD3d at 1179-1180). Accordingly, we find that the record supports Family Court's [*4]determination that respondent permanently neglected the child (see Matter of Paige J. [Jeffrey K.], 155 AD3d at 1474-1475; Matter of Alexander Z. [Jimmy Z.], 149 AD3d at 1180).
Respondent argues that Family Court should have granted him a suspended judgment, rather than terminate his parental rights. "[T]he sole concern at a dispositional hearing is the best interests of the child and there is no presumption that any particular disposition, including the return of a child to a parent, promotes such interests" (Matter of Isabella M. [Kristine N.], 168 AD3d 1234, 1235 [2019] [internal quotation marks and citations omited]; see Matter of Illion R. [Rachael SS.], 154 AD3d 1126, 1127-1128 [2018], lv denied 30 NY3d 908 [2018]). "A suspended judgment offers a brief grace period designed to prepare the parent to be reunited with the child, but is only appropriate where a delay would be consonant with the best interests of the child" (Matter of Jazmyne II. [Frank MM.], 144 AD3d 1459, 1461 [2016] [internal quotation marks and citations omitted], lv denied 29 NY3d 901 [2017]). Here, there is no indication "that a brief grace period would lead to the necessary improved parenting and a safe reunification . . . or
. . . that it would be in [the child's] best interests" (Matter of Jessica U. [Stephanie U.], 152 AD3d at 1006).
The child, who was four years old at the time of the hearing, had lived in the same foster home since she first came into care as an infant. By all accounts, the child was thriving in the foster home and bonded with the foster mother, as well as the foster mother's other children and extended family. The foster mother testified that she wanted to adopt the child, and the child's caseworker opined that, based on her observations over the past three years, such outcome was in the child's best interests. Although the testimony also showed that respondent had found stable housing and that he and the child have a good relationship, there was testimony that indicated that respondent was using drugs. One of petitioner's employees, who supervised respondent's visits, testified that, at a visit in November 2017, she smelled an odor, which she identified as crack cocaine, emanating from respondent's hair, skin and clothes. She stated that respondent was "acting different" at this visit and that, at one point, he pulled a small plastic bag out of his pocket containing "a little, white circular rock" that looked like crack cocaine. Under these circumstances, and considering the length of time that the child had been in the foster mother's home, there is a sound and substantial basis in the record to support Family Court's finding that termination of respondent's parental rights, rather than a suspended judgment, was in the child's best interests (see Matter of Brielle UU. [Brandon UU.], 167 AD3d 1169, 1174 [2018]; Matter of Zyrrius Q. [Nicole S.], 161 AD3d at 1235; Matter of Jah'Meir G. [Eshale G.], 112 AD3d 1014, 1016 [2013], lv denied 22 NY3d 863 [2014]).
Lynch, Mulvey, Devine and Rumsey, JJ., concur.
ORDERED that the appeals from the decision entered September 28, 2017 and the order entered October 13, 2017 are dismissed, without costs.
ORDERED that the order entered February 2, 2018 is affirmed, without costs.



Footnotes

Footnote 1: The mother's parental rights were terminated in March 2016.

Footnote 2: Respondent's appeal from the fact-finding order entered October 13, 2017 must be dismissed as no appeal lies from a nondispositional order in a permanent neglect proceeding (see Matter of Jahvani Z. [Thomas V.—Mariah Z.], 168 AD3d 1146, 1147 [2019], lv denied 33 NY3d 902 [2019]; Matter of Zyrrius Q. [Nicole S.], 161 AD3d 1233, 1233 n 2 [2018], lv denied 32 NY3d 903 [2018]). Respondent's appeal from Family Court's September 28, 2017 decision must also be dismissed as no appeal lies from a decision (see Family Ct Act § 1112 [a]; Matter of Kristen II. v Benjamin JJ., 169 AD3d 1176, 1177 n [2019]). Nevertheless, the issues raised with respect to the decision and such order necessarily come up for review upon the appeal from the dispositional order (see Matter of Keadden W. [Hope Y.], 165 AD3d 1506, 1507 [2018], lv denied 32 NY3d 914 [2019]; Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d 1077, 1077 n [2018]).