Matter of Dawn M. (Michael M.) (2019 NY Slip Op 05350)





Matter of Dawn M. (Michael M.)


2019 NY Slip Op 05350


Decided on July 3, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 3, 2019

526266

[*1]In the Matter of DAWN M. and Others, Alleged to be Permanently Neglected Children. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MICHAEL M. et al., Appellants.

Calendar Date: June 4, 2019

Before: Garry, P.J., Egan Jr., Aarons, Rumsey and Pritzker, JJ.


Jeffrey L. Zimring, Albany, for Michael M., appellant.
Mitchell Kessler, Cohoes, for Brendi M., appellant.
Broome County Department of Social Services, Binghamton (Kuredin Eytina of counsel), for respondent.
Michelle E. Stone, Vestal, attorney for the children.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeal from an order of the Family Court of Broome County (Pines, J.), entered January 30, 2018, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondents' parental rights.
Respondent Michael M. (hereinafter the father) and respondent Brendi M. (hereinafter the mother) are the parents of four children (born in 2004, 2007, 2008 and 2009). Their involvement with petitioner began in late 2012 and, in May 2013, respondents were adjudicated to have neglected the children. While the children were thereafter living with the father, an allegation was made that he had engaged in excessive corporal punishment directed at the oldest child. As a result, in September 2013, the children were removed from the home to the care and custody of petitioner and placed in foster care. Thereafter, respondents had supervised visitation with the children and were offered services aimed at, among other things, improving their parenting skills. Eventually, as respondents grew increasingly uncooperative and the children made additional disclosures about what had occurred in respondents' home, the permanency goal for the children changed and, in May 2016, petitioner commenced this proceeding pursuant to Social Services Law § 384-b to terminate respondents' parental rights. Following a fact-finding and dispositional hearing, Family Court granted petitioner's application, adjudicated the children to be permanently neglected and terminated respondents' parental rights. Respondents appeal.
We affirm. Where a petitioning agency seeks to terminate parental rights based on permanent neglect, it must first "'prove by clear and convincing evidence that it made diligent efforts to encourage and strengthen respondent[s'] relationship with the children'" (Matter of Logan C. [John C.], 169 AD3d 1240, 1242 [2019], quoting Matter of Keaddon W. [Hope Y.], 165 AD3d 1506, 1507 [2018], lv denied 32 NY3d 914 [2019]; see Social Services Law § 384-b [7] [a]). Such efforts "should be designed to address the problems that led to the child[ren's] removal, and to strengthen the family relationship" and may include "assisting the parent[s] with visitation, providing information on the child[ren's] progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Everett H. [Nicole H.], 129 AD3d 1123, 1125 [2015] [internal quotation marks and citation omitted]; see Matter of Jahvani Z. [Thomas V.—Mariah Z.], 168 AD3d 1146, 1149 [2019], lv denied 33 NY3d 902 [2019]; Matter of Paige J. [Jeffrey K.], 155 AD3d 1470, 1472 [2017]). Although a petitioning agency "must make practical and reasonable efforts" and should encourage the parents' participation (Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1002 [2017] [internal quotation marks and citation omitted]), the adequacy of the agency action is not contingent upon the parents' success in utilizing the services presented; rather, the petitioning agency "will be deemed to have fulfilled its obligation if appropriate services are offered but the parent refuses to engage in them or does not progress" (id. at 1003-1004 [internal quotation marks and citations omitted]; see Matter of Paige J. [Jeffrey K.], 155 AD3d at 1473; Matter of Jyashia RR. [John VV.], 92 AD3d 982, 983 [2012]).
Multiple caseworkers testified that when the children entered foster care, they exhibited significant behavioral problems, and petitioner was concerned about respondents' ability to supervise the children and use appropriate parenting techniques. Respondents often spoke harshly to the children, focused excessively on negative behaviors and did not engage with the children in an age-appropriate manner. To address these issues, petitioner recommended various services — for the mother, substance abuse evaluation and treatment, a mental health evaluation, domestic violence counseling, parenting classes and anger management classes; for the father, substance abuse evaluation and treatment, parenting classes and anger management classes. In addition, both respondents were required to cooperate with petitioner. In addition, petitioner offered coached visitation and post-visitation counseling, made efforts to accommodate respondents' cultural and religious preferences, worked with respondents to set goals and expectations for each visit, considered what activities and settings would make for a successful visit, ensured that the parents remained involved in the children's health care and educational decisions and, after the mother began to have transportation issues while the father was incarcerated, provided transportation assistance. Although respondents showed no appreciable improvement in their parenting skills or relationships with the children, we find ample evidence in the record that petitioner — by offering services, programs and counseling to help respondents develop better parenting skills and address the issues that made parenting difficult for them — "discharged its duty to make diligent efforts" to encourage and strengthen respondents relationship with the children (Matter of Jessica U. [Stephanie U.], 152 AD3d at 1004; see Matter of Paige J. [Jeffrey K.], 155 AD3d at 1473; Matter of Everett H. [Nicole H.], 129 AD3d at 1125-1126; Jyashia RR. [John VV.], 92 AD3d at 983-984).
Petitioner further proved by clear and convincing evidence that respondents, although able to do so, failed to adequately plan for the children's future (see Social Services Law § 384-b [7] [c]; Matter of Logan C. [John C.], 169 AD3d at 1243; Matter of Paige J. [Jeffrey K.], 155 AD3d at 1474). Such planning requires a parent "to take such steps as may be necessary to provide an adequate, stable home and parental care for the child[ren]" (Social Services Law § 384-b [7] [c]; see Matter of Jessica U. [Stephanie U.], 152 AD3d at 1004). An appropriate plan "must be realistic and feasible, and good faith effort shall not, of itself, be determinative" (Social Services Law § 384-b [7] [c]; see Matter of Paige J. [Jeffrey K.], 155 AD3d at 1474; Matter of Alexander Z. [Jimmy Z.], 149 AD3d 1177, 1178 [2017]). At a minimum, this requires that the parents "take meaningful steps to correct the conditions that led to the child[ren's] initial removal from the home" (Matter of Jace N. [Jessica N.], 168 AD3d 1236, 1239 [2019] [internal quotation marks and citations omitted], lv denied 32 NY3d 918 [2019]; see Matter of Jahvani Z. [Thomas [*2]V.—Mariah Z.], 168 AD3d at 1150-1151; Matter of Samuel DD. [Margaret DD.], 123 AD3d 1159, 1162 [2014], lv denied 24 NY3d 918 [2015]).
Several caseworkers testified that respondents were often uncooperative and difficult to work with. One caseworker explicitly noted that his advice "wasn't well received" and that respondents "just ma[de] things very difficult" by continuously criticizing and objecting to the care that the children received in their foster homes. Several witnesses, including the mother, described a difficult and fraught dynamic between the caseworkers and the mother [FN1]. Further, the testimony showed that, despite receiving services, respondents did not improve their parenting skills and did not develop insight into how to cope with the children's behavioral issues. The mother continued to have great difficulty managing the children during supervised visits and never progressed to unsupervised visits. She lacked the resources to adequately respond to the children's behavioral problems, at one point suggesting to one of the foster parents that when one of the children had an outburst, she should "duct tape her hands behind her back so [the child] couldn't hurt herself." Although the mother testified that she thought her ability to manage the children had improved with the coached visitation, she admitted that she was unaware of what was going on with the children's therapy, was uninvolved with their counseling and objected to the children receiving mental health treatment despite their serious diagnoses. The mother also continuously denied that the father subjected the children to physical or sexual abuse and, when asked to articulate her plan for the children's future, she simply stated that she wanted the children returned to the home.
As to the father, the caseworkers noted that he was somewhat engaged in services prior to his incarceration, but had also not benefitted or improved his parenting skills. After his incarceration, it became increasingly difficult to work with the father, as he was not responsive to caseworker communications and accused one caseworker of harassment. Though the father denied this and claimed that the caseworkers were unresponsive to him, he was nevertheless unable to articulate a plan for the children's future. In light of the record evidence that respondents were uncooperative, did not benefit from services or improve their parenting skills, were unwilling to recognize the seriousness of the children's mental health issues, failed to appreciate their own role in creating this situation and did not offer realistic options for the children's return, we find that petitioner proved by clear and convincing evidence that respondents failed to plan for the children's future, although able to do so (see Matter of Logan C. [John C.], 169 AD3d at 1244-1245; Matter of Jessica U. [Stephanie U.], 152 AD3d at 1005; Matter of Samuel DD. [Margaret DD.], 123 AD3d at 1162).
We find no merit to the father's contention that Family Court improperly permitted petitioner to ask its own witness several leading questions. Whether to permit such questioning is within the sound discretion of Family Court and, given the limited nature of such questions, we discern no abuse of that discretion (see generally Matter of Ostrander v Ostrander, 280 AD2d 793, 792 [2001]). We also reject respondents' arguments that the court impermissibly permitted testimony that the father had sexually abused the children and that the mother was aware of such abuse. Contrary to respondents' assertions, such testimony does not constitute inadmissible hearsay because it was not offered for its truth, but rather to give context to petitioner's actions (see Matter of Marino S., 100 NY2d 361, 372 [2003], cert denied 540 US 1059 [2003]; Matter of Jayveon S. [Timothy S.], 158 AD3d 1283, 1283 [2018], lv denied 31 NY3d 908 [2018]). Based on the foregoing, we find that Family Court's determination that respondents permanently neglected the subject children is supported by the record (see Matter of Jessica U. [Stephanie U.], 152 AD3d at 1005; Matter of Everett H. [Nicole H.], 129 AD3d at 1126-1127).
The mother's remaining contentions do not require extended discussion. Her claim that Family Court was biased against her is unpreserved for appellate review given her failure to object or move for recusal (see Matter of Ashlyn Q. [Talia R.], 130 AD3d 1166, 1169 [2015]; [*3]Matter of Kimberly Z. [Jason Z.], 88 AD3d 1181, 1184 [2011]), as is her contention that the proceeding was jurisdictionally defective because the court did not provide notice to the Secretary of the Interior (see 25 USC §§ 1911, 1912 [a], [b]), which she raises for the first time on appeal (see Matter of Devin M. [Margaret W.], 119 AD3d 435, 436-437 [2014]; Matter of Theresa BB. v Ryan DD., 64 AD3d 977, 978 [2009], lv denied 13 NY3d 707 [2009]). In any event, were the mother's claim regarding the Indian Child Welfare Act properly before us, we would find such claim wholly without merit. The parties previously agreed that the Indian Child Welfare Act is not applicable to their children, such agreement is reflected in numerous prior orders that are not the subject of this appeal and, moreover, the children are not "Indian child[ren]" within the meaning of the statute (see generally 25 USC § 1903 [4]).
Garry, P.J., Aarons, Rumsey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The mother acknowledged that she was partially responsible for this tension given the demands that she and the father had placed on the caseworkers.