Matter of Konner N. (Justin O.) (2025 NY Slip Op 01017)

Matter of Konner N. (Justin O.)

2025 NY Slip Op 01017

Decided on February 20, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 20, 2025

CV-23-0329
[*1]In the Matter of Konner N., Alleged to be a Permanently Neglected Child. Chemung County Department of Social Services, Respondent; Justin O., Appellant.

Calendar Date:January 6, 2025

Before:Garry, P.J., Pritzker, Ceresia, Powers and Mackey, JJ.

Michelle I. Rosien, Philmont, for appellant.
M. Hyder Hussain, County Attorney, Elmira (Mark H. Smith of counsel), for respondent.
Michelle E. Stone, Vestal, attorney for the child.

Pritzker, J.
Appeal from an order of the Family Court of Chemung County (Richard Rich Jr., J.), entered January 25, 2023, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent's parental rights.
Respondent (hereinafter the father) is the father of the subject child (born in 2010). As relevant here, in September 2020, petitioner filed a neglect petition against the father and the child's mother seeking to remove the child due to the mother's history of drug use and the father's incarceration. After the petition was filed, the father consented to the temporary removal of the child and the child was placed, by way of Family Ct Act article 10, with a maternal cousin. Subsequently, the father consented to an entry of a finding that he had neglected the child and the placement with the maternal cousin was continued. Additionally, a temporary order of protection was entered that prevented the father from contacting or visiting the child. Thereafter, in February 2022, petitioner commenced this permanent neglect proceeding against the father, who had been released from custody and was on parole, seeking to terminate his parental rights based upon the father's failure to plan for the future of the child.[FN1] Following a fact-finding hearing, Family Court determined that petitioner had demonstrated that it engaged in diligent efforts to reunify the child with the father, but the father had failed to plan for the child's future. As such, Family Court adjudicated the child to be permanently neglected by the father and determined that a dispositional hearing was not required because there was a sufficient basis to conclude that termination of the father's parental rights was in the best interests of the child. The father appeals.
Family Court's finding that the father permanently neglected the child is supported by a sound and substantial basis in the record. "As relevant here, a permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for at least one year after the child came into the agency's care, to substantially and continuously or repeatedly plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Matter of Makayla I. [Sheena K.], 201 AD3d 1145, 1147 [3d Dept 2022] [internal quotation marks and citations omitted], lvs denied 38 NY3d 903 [2022], 38 NY3d 903 [2022]; see Social Services Law § 384-b [7] [a]). "As a threshold matter, the agency must prove — by clear and convincing evidence — that it made diligent efforts to encourage and strengthen the parent's relationship with the child" (Matter of Jason O. [Stephanie O.], 188 AD3d 1463, 1464 [3d Dept 2020] [citations omitted], lv denied 36 NY3d 908 [2021]; see Matter of Nikole V. [Norman V.], 224 AD3d 1102, 1103 [3d [*2]Dept 2024], lv denied 41 NY3d 909 [2024]). "To satisfy its duty of diligent efforts, petitioner must make practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child's progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Makayla I. [Sheena K.], 201 AD3d at 1147 [internal quotation marks and citations omitted]; see Matter of Desirea F. [Angela H.], 217 AD3d 1064, 1066 [3d Dept 2023], lv denied 40 NY3d 908 [2023]). "Notably, diligent efforts will be found where appropriate services are offered but the parent refuses to engage in them or does not progress" (Matter of Carmela D. [Shameeka G.], 232 AD3d 1126, 1128 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1003 [3d Dept 2017]).
The foster care caseworker for the child testified that, starting in January 2021, she met with the father on a monthly basis following his release from prison. During these meetings the caseworker would discuss with the father his compliance with parole as well as any services with which he was supposed to be engaging, such as anger management and sex offender treatment. The caseworker also provided the father with updates regarding the child and discussed planning and permanency. This included a conversation in September 2021 about possible surrender of the child. The caseworker explained that she was in contact with various service providers to confirm the father was in compliance. She stated that she and the father also discussed his employment, which involved mowing lawns and doing odd jobs, and that she confirmed he was receiving SNAP benefits. The caseworker testified that, although the father was prohibited from contacting the child directly, after confusion as to whether the father was permitted to contact the child's service providers and foster parents, the caseworker reached out to the father's parole officer who informed her that this contact was permissible. She relayed this to the father on two or three occasions, the first of which was in August 2021. The caseworker provided the father with phone numbers for the child's mental health counselor and the cell phone number for the child's foster parents. The caseworker testified that, upon sharing with the father the child's desire to no longer have any contact with him, the father refused to meet with her and instructed her that everything was to go through his attorney. The last meeting the caseworker had with the father was in December 2021. The caseworker testified that she had not been provided with any additional information from the father regarding his treatment providers and did not know where the father was currently residing. The caseworker explained that his phone number was no longer in service and [*3]that she received an updated telephone number from the father's attorney but was unsuccessful in making contact. The caseworker also made an unannounced visit to the father's residence in February 2022 in an attempt to make contact with him, but he was not home. The only time the caseworker was able to make contact with the father was at court appearances, but rather than set up a meeting, the father referred her to his attorney. Given the foregoing, "Family Court did not err in determining that petitioner satisfied its threshold burden of establishing that it exercised diligent efforts to encourage and strengthen the parental relationship" (Matter of Makayla I. [Sheena K.], 201 AD3d at 1148 [citations omitted]; see Matter of Nikole V. [Norman V.], 224 AD3d at 1104; Matter of Jessica U. [Stephanie U.], 152 AD3d at 1003-1004).
"Once diligent efforts have been shown, the petitioner must then prove by clear and convincing evidence that the respondent failed to substantially plan for the child's future" (Matter of Issac Q. [Kimberly R.], 212 AD3d 1049, 1051 [3d Dept 2023] [internal quotation marks, brackets and citations omitted], lv denied 39 NY3d 913 [2023]; see Matter of Drey L. [Katrina M.], 227 AD3d 1134, 1137 [3d Dept 2024]). "To substantially plan, a parent must, at a minimum, take meaningful steps to correct the conditions that led to the child's initial removal. The parent's plan must be realistic and feasible, and his or her good faith effort, alone, is not enough" (Matter of Harmony F. [William F.], 212 AD3d 1028, 1031 [3d Dept 2023] [internal quotations marks and citations omitted]; see Matter of Gabriel J. [Christina I.], 232 AD3d 1093, 1095 [3d Dept 2024]). "Notably, a parent's failure to utilize available services or fully cooperate with the authorized agency are factors to be considered in assessing whether a parent has complied with the statutory requirements" (Matter of Matthew YY., 274 AD2d 685, 686-687 [3d Dept 2000] [citations omitted]; see Social Services Law § 384-b [7] [c]; Matter of Logan C. [John C.], 169 AD3d 1240, 1243 [3d Dept 2019]).
Testimony established that, despite being informed by the caseworker that the father could contact the foster parents and the child's mental health counselor, the father failed to do so. Although the father testified that he did, at one point, contact the child's mental health counselor, that did not occur until after the permanent neglect petition was filed and, at that point, the child had ceased working with that counselor. Additionally, while the father blamed special parole conditions for his inability to contact the foster parents and the child's treatment provider, the court did not find this assertion credible, a determination to which we give deference (see Matter of Caylin T. [Christine T.], 229 AD3d 859, 861 [3d Dept 2024]; Matter of Ryan J. [Taylor J.], 222 AD3d 1207, 1212 [3d Dept 2023], lv denied 41 NY3d 909 [2024]). Moreover, while the father did make positive strides in successfully [*4]completing his parole and actively engaging in sex offender treatment, testimony demonstrated that the father had not made any progress toward obtaining a suitable residence for the child nor did he have steady employment to support himself and the child. Finally, and most significantly, the father failed to fully cooperate with petitioner, given his outright refusal to continue working with the caseworker (see Matter of Arianna I. [Roger I.], 100 AD3d 1281, 1283 [3d Dept 2012]). "According deference to Family Court's credibility determinations, we are of the view that petitioner met its burden of establishing that respondent permanently neglected the child[ ] by failing to make a realistic and feasible plan for [his] future, as [the father] had, essentially, no plan in place" (Matter of James J. [James K.], 97 AD3d 936, 939 [3d Dept 2012] [citations omitted]; see Matter of Ronaldo D. [Jose C.], 177 AD3d 1217, 1220 [3d Dept 2019], lv denied 35 NY3d 906 [2020]). Therefore, based on the foregoing, Family Court's determination that the child is permanently neglected by the father has a sound and substantial basis in the record.
We do, however, agree with the father that Family Court erred in failing to hold a dispositional hearing. "Family Ct Act § 625 (a) expressly provides that, upon completion of a fact-finding hearing, a dispositional hearing may commence immediately after the required findings are made; provided, however, that if all parties consent the court may, upon motion of any party or upon its own motion, dispense with the dispositional hearing and make an order of disposition on the basis of competent evidence admitted at the fact-finding hearing" (Matter of Harmony F. [William F.], 212 AD3d at 1033 [internal quotation marks and brackets omitted]). Given that the record is devoid of the parties' consent to dispense with a dispositional hearing, the matter is remitted for a dispositional hearing "or to otherwise affirmatively gain the parties' consent to dispense of the matter without one" (id.; see Matter of Shavonda GG., 232 AD2d 780, 782 [3d Dept 1996]).
Garry, P.J., Ceresia, Powers and Mackey, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as terminated respondent's parental rights; matter remitted to the Family Court of Chemung County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: In July 2022, during the pendency of this proceeding, the mother surrendered her parental rights to the child.