Matter of Desirea F. (Angela H.) (2023 NY Slip Op 03048)

Matter of Desirea F. (Angela H.)

2023 NY Slip Op 03048

Decided on June 8, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 8, 2023

532234
[*1]In the Matter of Desirea F., Alleged to be a Permanently Neglected Child. St. Lawrence County Department of Social Services, Respondent; Angela H., Appellant. (And Another Related Proceeding.)

Calendar Date:April 25, 2023

Before:Garry, P.J., Egan Jr., Lynch, Fisher and McShan, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Keith F. Schockmel of counsel), for appellant.
Stephen D. Button, County Attorney, Canton (Keith S. Massey Jr. of counsel), for respondent.
Trinidad M. Martin, Glens Falls, attorney for the children.

McShan, J.
Appeal from an order of the Family Court of St. Lawrence County (Derek P. Champagne, J.), entered March 10, 2020, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondent's parental rights.
The history of litigation concerning respondent and two of her children (born in 2003 and 2005), which spans nearly 16 years since the removal of the children in 2007, is thoroughly chronicled in various prior decisions from this Court (Matter of Angela H. v St. Lawrence County Dept. of Social Servs., 180 AD3d 1143 [3d Dept 2020]; Matter of Dakota F. [Angela H.], 180 AD3d 1149 [3d Dept 2020]; Matter of Angela F. v St. Lawrence County Dept. of Social Servs., 146 AD3d 1243 [3d Dept 2017]; Matter of Desirea F. [Angela F.], 137 AD3d 1519 [3d Dept 2016]; Matter of Desirea F. [Angela F.], 136 AD3d 1074 [3d Dept 2016]; Matter of Dakota F. [Angela F.], 110 AD3d 1151 [3d Dept 2013], lv denied 22 NY3d 1015 [2013]; Matter of Dakota F. [Angela F.], 92 AD3d 1097 [3d Dept 2012]).[FN1] We will not recount the entirety of the litigation here, beyond noting that the history of this case is riddled with various errors on the part of Family Court that played a role in preventing respondent from having any meaningful contact with the subject children since 2011 (Matter of Angela F. v St. Lawrence County Dept. of Social Services, 146 AD3d at 1248).[FN2] Nevertheless, we most recently affirmed a November 2017 order of Family Court (Richards, J.) modifying the permanency planning goal from return to parent to free for adoption in light of the sound and substantial basis in the record supporting that determination (Matter of Dakota F. [Angela H.], 180 AD3d at 1154). In this respect, the long history of respondent's separation from the children has had a clear adverse effect on any potential for reunification, such that placement for adoption has become the most feasible goal at this point (see id. at 1153-1154).
Meanwhile, in May 2018, petitioner commenced the two instant permanent neglect proceedings, seeking to adjudicate the subject children permanently neglected and terminate respondent's parental rights.[FN3] Following a fact-finding hearing, Family Court (Richards, J.) determined that petitioner had exercised diligent efforts to encourage and strengthen the parental relationship, and respondent had failed to plan for the future of the subject children. After conducting a dispositional hearing in March 2020, Family Court (Champagne, J.) issued an order terminating respondent's parental rights. Respondent appeals.[FN4]
We affirm. "A permanently neglected child is 'a child who is in the care of an authorized agency and whose parent has failed for a period of either at least one year or 15 out of the most recent 22 months following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with [*2]or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child' " (Matter of Harmony F. [William F.], 212 AD3d 1028, 1029 [3d Dept 2023] [ellipsis and brackets omitted], quoting Social Services Law § 384-b [7] [a]; see Matter of Issac Q. [Kimberly R.], 212 AD3d 1049, 1050 [3d Dept 2023], lv denied ___ NY3d ___ [May 18, 2023]). "As a threshold matter, the agency must prove — by clear and convincing evidence — that it made diligent efforts to encourage and strengthen the parent's relationship with the child," which may be established by proof that "the agency ma[de] practical and reasonable efforts to ameliorate the problems preventing reunification and to strengthen the family relationship" in accordance with the goals of the permanency plan (Matter of Jason O. [Stephanie O.], 188 AD3d 1463, 1464 [3d Dept 2020] [internal quotation marks, citations and brackets omitted], lv denied 36 NY3d 908 [2021]; see Matter of Chloe B. [Sareena B.], 189 AD3d 2011, 2012 [3d Dept 2020]). Petitioner need "only make reasonable efforts, and it will be deemed to have fulfilled its obligation if appropriate services are offered but the parent refuses to engage in them or does not progress" (Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1004 [3d Dept 2017] [internal quotation marks and citations omitted]). Once petitioner meets the threshold burden of establishing diligent efforts, it must then "demonstrate[ ], through clear and convincing evidence, that respondent failed to substantially plan for the future of the child for the requisite period of time," which requires the parent to "take meaningful steps to correct the conditions that led to the child's removal" (Matter of Jason O. [Stephanie O.], 188 AD3d at 1466; see Matter of Logan C. [John C.], 169 AD3d 1240, 1243 [3d Dept 2019]).
The proof in this proceeding closely mirrors that of the November 2017 permanency hearing (see Matter of Dakota F. [Angela H.], 180 AD3d at 1154) as well as a second earlier proceeding in February and March 2017 encompassing respondent's 2014 petitions seeking to reestablish visitation with the children (see Angela H. v St. Lawrence County Dept. of Social Services, 180 AD3d at 1145). In this respect, petitioner again submitted the report and testimony of Michael Small, a clinical neuropsychologist, who evaluated respondent in July and September 2016 and reviewed, among other things, several of respondent's mental health and medical records. As indicated in his January 2017 report, Small diagnosed respondent as suffering from, among other mental health diagnoses, personality disorder with predominantly borderline, paranoid, schizotypal, narcissistic and antisocial features, and symptoms of somatic symptom disorder. Based on the diagnosis, Small recommended a follow-up evaluation with [*3]a speech language pathologist, a psychopharmacologist, a psychiatrist and a medical professional who was experienced in treating individuals with addictions to substances or to medications, in addition to individual counseling based on personality disorders.[FN5] Small's report opined that respondent's lengthy history of mental health issues and sporadic treatment demonstrated marginal improvement, and that her prognosis was "guardedly optimistic, but only given her willingness to admit to her problems and adhere to multi-disciplinary treatment strategies over an extended period." Consistent with that conclusion, at the hearing, Small testified that treatment of respondent's diagnosis would take a minimum of three years of individual therapy, with ongoing maintenance treatment to follow, and, if respondent's conditions remained untreated, she could continue to suffer from, among other things, psychological, relationship and child-rearing difficulties.
Petitioner's caseworker testified that, after receiving Small's report, she contacted various providers to ascertain whether any facility or individual could provide the various recommended treatments.[FN6] Despite the caseworker's efforts, only one provider, Mosaic Behavioral Health Clinic, was able to provide the entire gamut of services. Accordingly, petitioner's caseworker provided respondent with a referral to Mosaic in April 2017. Despite these efforts, respondent did not schedule an appointment with Mosaic until August 2017 despite the availability of various earlier appointments, which respondent attributed to work commitments and vacation. Respondent also voiced her reluctance to attend treatment with Mosaic based upon her belief that she was not required to comply with mental health treatment. Eventually, respondent attended the August 2017 appointment, at which point she was diagnosed with unspecified anxiety disorder and unspecified personality disorder with narcissistic and antisocial traits. However, respondent refused to continue engaging in any treatment at Mosaic, citing her disagreement with the diagnosis, her refusal to meet with a male counselor and her objection to the travel commitment. To this end, respondent insisted that petitioner refer her to another facility, which request was refused owing to petitioner having already provided several referrals and two prior evaluations.
As to her own efforts, respondent's testimony largely corroborated petitioner's account of the resources offered by petitioner and her reluctance to engage. In this respect, respondent characterized the mental health counselor at Mosaic as a liar, suggesting that he had only indicated to her that he would be treating her for anxiety, which was consistent with her own belief as to her mental health issues. In line with that sentiment, respondent's testimony, in sum and substance, consisted of an expression of her belief that she does not suffer from a personality disorder and that Small's diagnosis could not be [*4]credited based upon her own understanding of how such a condition should be properly diagnosed.
Ultimately, the record firmly establishes that petitioner made various efforts to provide respondent with a mental health evaluation and appropriate treatment, including providing respondent with resources to facilitate her attendance and, despite petitioner's efforts, respondent steadfastly refused those services (see Matter of Everett H. [Nicole H.], 129 AD3d 1123,1125-1126 [3d Dept 2015]; Matter of Asianna NN. [Kansinya OO.], 119 AD3d 1243, 1245-1246 [3d Dept 2014], lv denied 24 NY3d 907 [2014]). As we have previously noted, the history of this case reflects respondent's longstanding failure to acknowledge her mental illness and "the effect that her diagnoses [has had] on her relationship with the children and their maturation and emotional stability," and she has further failed to "commit to the recommended course of mental health treatment, while continuing to ignore the children's right to have some permanency and stability in their lives" (Matter of Dakota F. [Angela H.], 180 AD3d at 1154). The ultimate result of this case is regrettable and, at certain points during its history, the outcome may have been avoided. Nonetheless, on the record before us, we find that petitioner clearly and convincingly established diligent efforts to provide appropriate services to respondent, which she refused, as well as respondent's failure to adequately plan for the children's return and, therefore, we affirm Family Court's determination (see Matter of Logan C. [John C.], 169 AD3d at 1243; Matter of Zyrrius Q. [Nicole S.], 161 AD3d 1233, 1234 [3d Dept 2018], lv denied 32 NY3d 903 [2018]; Matter of Jah'Meir G. [Eshale G.], 112 AD3d 1014, 1015-1016 [3d Dept 2013], lv denied 22 NY3d 863 [2014]).
Garry, P.J., Egan Jr., Lynch and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The mother's two other children, her oldest and youngest, are not the subject of these proceedings.

Footnote 2: The subject children have resided with the same foster parents since that time and presently reside in Iowa.

Footnote 3: During the proceeding, the attorney for the children advocated in support of a finding of permanent neglect. The attorney for the children on appeal maintains that position.

Footnote 4: Although the eldest child subject to this proceeding turned 18 during the pendency of this appeal, respondent's challenge to the finding of permanent neglect is not moot owing to the "permanent and significant stigma that may affect respondent's status in future proceedings" (Matter of Derick L. [Michael L.], 166 AD3d 1325, 1326 [3d Dept 2018], lv denied 32 NY3d 915 [2019]).

Footnote 5: Small also diagnosed respondent with a benzodiazepine addiction, reportedly in remission, based upon respondent's prior abuse of Ativan. To this end, Small noted that respondent had a persistent history of surreptitiously seeking prescriptions for Ativan from treating providers and hospitals.

Footnote 6: Petitioner also provided respondent with regular updates concerning the children, including their report cards and current photographs in accordance with Family Court's orders. The evidence at the hearing also established that the children had been provided with counseling services aimed at treating anxiety and stress, which, according to the respective providers, would arise from the children's fear that they would be forced to have contact with respondent or be returned to her care (see generally Matter of Samuel DD. [Margaret DD.], 123 AD3d 1159, 1161 [3d Dept 2014], lv denied 24 NY3d 918 [2015]; Matter of Laelani B., 59 AD3d 880, 881 [3d Dept 2009]).