Matter of Gabriel J. (Christina I.) (2024 NY Slip Op 05858)

Matter of Gabriel J. (Christina I.)

2024 NY Slip Op 05858

Decided on November 21, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 21, 2024

CV-23-1374
[*1]In the Matter of Gabriel J., Alleged to be a Permanently Neglected Child. Essex County Department of Social Services, Respondent; Christina I., Appellant.

Calendar Date:October 10, 2024

Before:Clark, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Mackey, JJ.

Michelle I. Rosien, Philmont, for appellant.
Essex County Department of Social Services, Elizabethtown (Michele A. Bowen of counsel), for respondent.
Trinidad M. Martin, Glens Falls, attorney for the child.

Clark, J.P.
Appeal from an order of the Family Court of Essex County (Richard B. Meyer, J.), entered July 6, 2023, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the child to be permanently neglected, and terminated respondent's parental rights.
Respondent (hereinafter the mother) is the mother of the subject child (born in 2015).[FN1] In February 2020, the mother was caught stealing from a Wal-Mart, and law enforcement officials learned that she had left the child alone at a nearby store while engaging in the theft. Then, in April 2021, the child sustained various facial injuries which she asserted were inflicted by the mother's paramour (hereinafter the paramour), who resided in the same household as the mother and the child. As a result of that incident, petitioner filed a neglect petition against the mother. The child was removed from the mother's care in May 2021 and has remained in foster care since. In September 2022, the mother admitted that she left the child alone at a store in February 2020, and she consented to a finding of neglect on that basis.[FN2] Petitioner filed the instant permanent neglect petition in March 2023, seeking to terminate the mother's parental rights. Following a fact-finding hearing, Family Court adjudicated the child to be a permanently neglected child and, after a dispositional hearing, terminated the mother's parental rights and freed the child for adoption. The mother appeals.
A permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for at least one year or for 15 out of the most recent 22 months, to substantially and continuously or repeatedly "plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child" (Social Services Law § 384-b [7] [a]; see Matter of Desirea F. [Angela H.], 217 AD3d 1064, 1065-1066 [3d Dept 2023], lv denied 40 NY3d 908 [2023]; Matter of Frank Q. [Laurie R.], 204 AD3d 1331, 1333 [3d Dept 2022]). "To make the threshold showing of diligent efforts, the petitioning agency must establish, by clear and convincing evidence, that it made practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child's progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Asiah S. [Nancy S.], 228 AD3d 1034, 1035 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Jace N. [Jessica N.], 168 AD3d 1236, 1237 [3d Dept 2019], lv denied 32 NY3d 918 [2019]). On appeal, we defer to Family Court's credibility determinations (see Matter of Bayley W. [Patrick K.], 146 AD3d 1097, [*2]1099 [3d Dept 2017], lv denied 29 NY3d 907 [2017]; Matter of Victoria XX. [Thomas XX.], 110 AD3d 1168, 1170-1171 [3d Dept 2013]).
Here, the child, who was six years old at the time of the removal, consistently blamed the paramour for causing her facial injuries, and she displayed a trauma response whenever she saw the paramour or heard her name. The child was diagnosed with trauma stress disorder and attended regular mental health counseling. Petitioner provided the mother with updates about the child's progress in counseling and offered the mother regular supervised phone calls and visitation with the child, until such contact was deemed contrary to the child's mental health. Petitioner conducted service plan review meetings and recommended that the mother engage in mental health counseling, substance abuse treatment and parenting classes; petitioner also offered assistance for the mother to engage in such services. Additionally, in light of the child's reaction to the paramour and the issuance of an order of protection requiring the paramour to stay away from the child, petitioner repeatedly recommended that the mother obtain housing separate from the paramour. Petitioner's witnesses explained that this presented the biggest barrier to reunification and that they had provided the mother with housing applications to help her achieve that goal. Under these circumstances, we find that Family Court properly determined that petitioner met its burden of establishing diligent efforts to encourage and strengthen the mother's relationship with the child (see Matter of Asiah S. [Nancy S.], 228 AD3d at 1036; Matter of Nevaeh N. [Heidi O.], 220 AD3d 1070, 1071 [3d Dept 2023], lv denied 41 NY3d 903 [2024]; Matter of Everett H. [Nicole H.], 129 AD3d 1123, 1125 [3d Dept 2015]).
Next, a petitioning agency is required to "demonstrate, through clear and convincing evidence, that [a parent] failed to substantially plan for the future of the child for the requisite period of time, which requires the parent to take meaningful steps to correct the conditions that led to the child's removal" (Matter of Desirea F. [Angela H.], 217 AD3d at 1066 [internal quotation marks, brackets and citation omitted]; see Social Services Law § 384-b [7] [c]; Matter of Leon YY. [Christopher ZZ.], 206 AD3d 1093, 1096 [3d Dept 2022]). The mother's visits with the child were generally positive, and she attended these regularly until approximately August 2022, when her attendance became inconsistent. During a visit, the mother showed the child a picture of the facial injuries she sustained in April 2021 and accused the child of lying about their source.[FN3] The mother admitted that she believed the injuries were self-inflicted. Further, although the mother acknowledged that the child had certain trauma responses to the paramour and that an order of protection was in place, she continued to live with the paramour even after the instant petition was filed. According to the mother, as of the fact[*3]-finding hearing, she had obtained her own apartment and was living separately from the paramour. As to the parenting classes, the mother asserted that she previously completed such a class, but she refused to provide a release for those records or to complete another class. Although the mother attended medication management, her engagement with mental health counseling was inconsistent.[FN4] In December 2022, the mother was arrested for driving while ability impaired due to being under the influence of drugs; however, she maintained that she did not need substance abuse treatment. Throughout the hearing, the mother refused to accept any responsibility for the circumstances that kept the child in foster care, placing blame with the child and petitioner instead. Based upon these circumstances, and deferring to Family Court's credibility determinations, petitioner met its burden of establishing, by clear and convincing evidence, that the mother failed to substantially plan for the child's future for at least one year before the filing of the permanent neglect petition and, consequently, the court properly adjudicated the child to be permanently neglected (see Matter of Asiah S. [Nancy S.], 228 AD3d at 1036-1037; Matter of Paige J. [Jeffrey K.], 155 AD3d 1470, 1474-1474 [3d Dept 2017]; Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1004-1005 [3d Dept 2017]).[FN5]
Turning to the disposition, we disagree with the mother's contention that Family Court should have granted her a suspended judgment. At a dispositional hearing, Family Court's only concern is the best interests of the child, without any presumption in favor of reunification, and "[a] suspended judgment is only appropriate where a parent has made significant progress such that a brief grace period would allow him or her to demonstrate the ability to be a fit parent, and such delay is consistent with the child's best interests" (Matter of Asiah S. [Nancy S.], 228 AD3d at 1037; see Matter of Leon YY. [Christopher ZZ.], 206 AD3d at 1096; Matter of Landon U. [Amanda U.], 132 AD3d 1081, 1085 [3d Dept 2015]). The mother did not appear at the July 2023 dispositional hearing, despite being informed of the scheduled date during the prior court appearance. Petitioner proffered testimony from the property manager for the mother's current landlord, which testimony contradicted the mother's earlier assertion that she was living apart from the paramour. The property manager explained that the paramour was in the mother's apartment nearly every day, including overnights, and that the paramour's sons were often present in that apartment. According to the property manager, the paramour reported that the mother needed her, as she could not be alone due to a health issue.
At the time of the dispositional hearing, the mother had not had any contact with the child since March 2023, when visits were suspended as a result of the mother's conduct during visits and due to threats that she made against petitioner's caseworkers[*4]. The child had been doing well in foster care, and she was engaged in various sports and other enriching activities. Petitioner's caseworker testified that the foster parents resided near the mother and the paramour and that this led to chance encounters that the child found very upsetting. As a result, the child's then-current foster parents were assisting in acquainting different, pre-adoptive foster parents with the child, her history and her needs. According to the caseworker, the child had been spending time with the pre-adoptive foster parents in the preceding months and, as she was becoming more comfortable with them, petitioner planned to relocate the child in the coming weeks. Giving the appropriate deference to Family Court's factual findings and credibility determinations, we agree that the mother failed to make any meaningful progress in overcoming the barriers preventing reunification and that a suspended judgment is not in the child's best interests. Rather, Family Court's decision to terminate the mother's parental rights and free the child for adoption serves the best interests of the child and is supported by a sound and substantial basis in the record (see Matter of Nevaeh N. [Heidi O.], 220 AD3d at 1072-1073; Matter of Jason O. [Stephanie O.], 188 AD3d 1463, 1468 [3d Dept 2020], lv denied 36 NY3d 908 [2021]; Matter of Angelica VV., 53 AD3d 732, 733 [3d Dept 2008]). To the extent not expressly addressed herein, the mother's remaining contentions have been considered and found to lack merit.
Pritzker, Reynolds Fitzgerald, Ceresia and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The child's birth father is deceased.

Footnote 2: The mother also pleaded guilty to one count of endangering the welfare of a child as a result of that incident.

Footnote 3: As a result of this incident, and due to threats made by the mother against petitioner's caseworkers, Family Court suspended the mother's visits with the child in March 2023.

Footnote 4: The mother would not sign releases for her treatment providers except that she signed a limited release to allow petitioner to access her medication management and mental health treatment records between August 2022 and January 2023.

Footnote 5: To the extent that the mother complains that Family Court improperly incorporated testimony from a March 2023 permanency planning hearing into the fact-finding hearing for the instant permanent neglect proceeding, we note that such testimony was incorporated with her consent and, as such, the issue is unpreserved for appellate review (see Matter of B. Mc. [Dawn Mc.], 99 AD3d 713, 713 [2d Dept 2012]; see also Matter of Elaysia GG. [Amber HH.], 221 AD3d 1338, 1340 n [3d Dept 2023]). Nevertheless, we note that Family Court premised its decision only on evidence that was properly admissible at the fact-finding hearing (compare Family Ct Act § 1046 [c], with Family Ct Act § 624). Therefore, any such error was harmless (see Matter of Zaiden P. [Ashley Q.], 211 AD3d 1348, 1355 n 5 [3d Dept 2022], lvs denied 39 NY3d 911 [2023], 39 NY3d 911 [2023]; Matter of Nicholas R. [Jason S.], 82 AD3d 1526, 1528 n [3d Dept 2011], lvs denied 17 NY3d 706 [2011], 17 NY3d 706 [2011]).