Matter of Alisha SS. (Zuhra SS.) (2026 NY Slip Op 00956)

Matter of Alisha SS. (Zuhra SS.)

2026 NY Slip Op 00956

Decided on February 19, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 19, 2026

CV-24-1852
[*1]In the Matter of Alisha SS., Alleged to be a Permanently Neglected Child. Schenectady County Department of Social Services, Respondent; Zuhra SS., Appellant. (Proceeding No. 1.)
In the Matter of Alisha SS., Alleged to be a Permanently Neglected Child. Schenectady County Department of Social Services, Respondent; Micky TT., Respondent. (Proceeding No. 2.)

Calendar Date:January 14, 2026

Before:Reynolds Fitzgerald, J.P., Ceresia, Fisher, McShan and Mackey, JJ.

Sandra M. Colatosti, Albany, for appellant.
Christopher H. Gardner, County Attorney, Schenectady (Camille Siano Enders of counsel), for Schenectady County Department of Social Services, respondent.
Dana L. Salazar, East Greenbush, for Micky TT., respondent.
Alexandra G. Verrigni, Rexford, attorney for the child.

Fisher, J.
Appeal from an order of the Family Court of Schenectady County (Kevin Burke, J.), entered August 8, 2024, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondents' parental rights.
Respondent Zuhra SS. (hereinafter the mother) is the mother of the subject child (born in 2018). In October 2018, the child was removed from the mother's home and placed into the care and custody of petitioner — ultimately being placed and remaining with a foster family since November 2018. The basis for the child's removal involved, among other things, incidents of domestic violence between the mother and the child's biological father, as well as parenting and safety concerns involving the mother which led to a finding of neglect against her in 2019. Petitioner filed the instant permanent neglect petition in August 2022, seeking to terminate the mother's parental rights. Following a fact-finding hearing, Family Court adjudicated the child to be a permanently neglected child and, after a dispositional hearing, terminated the mother's parental rights and freed the child for adoption. The mother appeals.[FN1]
We affirm. "A permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for at least one year or for 15 out of the most recent 22 months, to substantially and continuously or repeatedly plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child" (Matter of Gabriel J. [Christina I.], 232 AD3d 1093, 1094 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 43 NY3d 901 [2025]). The petitioning agency "must first establish, by clear and convincing evidence, that it has made diligent efforts to encourage and strengthen the parent's relationship with the child, meaning practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child's progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Colby R. [David Q.], 199 AD3d 1192, 1194 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]).
Here, the record supports Family Court's determination that petitioner made diligent efforts to encourage and strengthen the mother's relationship with the child. Petitioner regularly conducted service plan reviews to evaluate the mother's progress toward the permanency goals and to address problems that arose which could prevent the child's return to her care. In assisting the mother, petitioner provided her with various types of educational programming [*2]and counseling services for parenting, safety, domestic violence and mental health. Such services evolved over time to conform to the mother's needs, which included increasing supervised visitation to a weekly schedule in an attempt to bond the mother with the child, and then adding pre-visit parenting classes with a parent educator who would assist the mother during her visits. Based on further observations by caseworkers during a visit, petitioner provided additional services and aid for ongoing domestic violence against the mother, including assistance with temporary housing and further counseling. Petitioner also coordinated and facilitated interdisciplinary meetings between the mother and various therapists and providers involved with the child's educational and medical needs. Based on the foregoing, we are satisfied that Family Court properly determined that petitioner met its burden of establishing diligent efforts to encourage and strengthen the mother's relationship with the child (see Matter of Macayla N. [Sheena N.], 240 AD3d 976, 978 [3d Dept 2025], lv denied ___ NY3d ___ [Feb. 11, 2026]; Matter of Gabriel J. [Christina I.], 232 AD3d at 1095; Matter of Makayla I. [Sheena K.], 201 AD3d 1145, 1147-1148 [3d Dept 2022], lvs denied 38 NY3d 903 [2022], 38 NY3d 903 [2022]).
Next, we find ample support in the record for Family Court's determination that the mother failed to substantially plan for the child's future despite being able to do so. In order to substantially plan for the future of the child, "a parent must, at a minimum, take meaningful steps to correct the conditions that led to the child's initial removal. The parent's plan must be realistic and feasible, and his or her good faith effort, alone, is not enough" (Matter of Jase M. [Holly N.], 190 AD3d 1238, 1241 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], lvs denied 37 NY3d 901 [2021], 37 NY3d 901 [2021]). When performing the relevant inquiry, "court[s] may consider [a parent's] failure to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available" (Matter of Zaiden P. [Ashley Q.], 211 AD3d 1348, 1354 [3d Dept 2022] [internal quotation marks, ellipsis and citation omitted], lvs denied 39 NY3d 911 [2023], 39 NY3d 911 [2023]). Notably, "[t]he petitioning agency will be deemed to have fulfilled that obligation if appropriate services are offered but the parent refuses to engage in them or does not progress" (Matter of Drey L. [Katrina M.], 227 AD3d 1134, 1136 [3d Dept 2024] [internal quotation marks and citations omitted]).
Although the mother initially demonstrated a willingness to receive certain assistance and was successful in completing some programming, each of petitioner's witnesses who had the opportunity to observe and work with the mother testified that she had not benefitted from the services she engaged in. Testimonial evidence revealed that the mother was on her cell phone [*3]or not participating with the educator during parenting sessions, would become "adversarial" with staff which made sessions "very tough," and had at times come unprepared for visits without food or toiletry items for the child. In terms of the mother's ability to safely and effectively parent the child, each of petitioner's witnesses reported that the mother displayed inconsistent growth or no progress and did not implement the skills taught in the parenting sessions. To this point, petitioner's caseworker testified that her multiple observations of the mother's residence also revealed a lack of food and personal hygiene products, as well as other safety concerns such as the temperature being approximately 45 degrees in her residence during March 2022 and the presence of insects living on the floor/carpeting. Relating to ongoing domestic violence issues involving the mother, her relatives and the father, each of petitioner's witnesses also expressed deep concern with the mother's failure to appreciate and properly respond to the seriousness of these threats and physical abuse — particularly when the mother wanted to drop an order of protection issued in her favor against the father so that they could resume coparenting after the father had brandished a firearm and threatened to kill both the mother and the child. The caseworker expressed more concern after the mother subsequently reported being in a new relationship with an individual who had been previously involved in a physical altercation with the father. Moreover, despite engaging in mental health counseling in 2020 and 2021, the treatment notes indicated that the mother was not substantially engaging in treatment. During this same time period, the caseworker testified that the mother missed nine supervised visits with the child and, in just 2021, missed 17 interdisciplinary meetings relating to the child's education and care needs. In view of the foregoing, and deferring to Family Court's credibility determinations, we conclude that petitioner proved by clear and convincing evidence that the mother failed to plan for the child's future, therefore Family Court's finding of permanent neglect as to her will not be disturbed (see Matter of Gabriel J. [Christina I.], 232 AD3d at 1096; Matter of Nikole V. [Norman V.], 224 AD3d 1102, 1105 [3d Dept 2024], lv denied 41 NY3d 909 [2024]; Matter of Zaiden P. [Ashley Q.], 211 AD3d at 1354; see also Matter of Macayla N. [Sheena N.], 240 AD3d at 979; Matter of Konner N. [Justin O.], 235 AD3d 1112, 1116 [3d Dept 2025]).
As to the disposition, the mother contends that Family Court's determination to terminate her parental rights, as opposed to granting a suspended judgment, was not in the best interests of the child. We disagree. Following an adjudication of permanent neglect, "Family Court's only concern is the best interests of the child, without any presumption in favor of reunification, and a suspended judgment is only appropriate where a parent has made [*4]significant progress such that a brief grace period would allow him or her to demonstrate the ability to be a fit parent, and such delay is consistent with the child's best interests" (Matter of Gabriel J. [Christina I.], 232 AD3d at 1097 [internal quotation marks, brackets and citation omitted]; see Family Ct Act § 631). The evidence presented at the dispositional hearing demonstrated that the child had been with the same foster family for essentially the child's entire life, developing a strong bond with both foster parents who were very responsive to the child's educational and care needs. Although, in the early stages of these proceedings, the child showed some interest with the mother during visits, this waned over time and by December 2021 the child began to express opposition to visits with the mother. After supervised visitation was suspended in September 2022, the mother had continued to inquire about the child's welfare but had not contacted the child's school or doctors when given the means to do so. The mother had also not taken steps to strengthen the bond between her and the child, and ceased participating in programming or counseling for parenting, prevention/safety and domestic violence. Contrary to the father's contentions, this conduct by the mother does not demonstrate an eagerness to improve her fitness as a parent and, although the mother is correct that she had maintained stable employment throughout these proceedings, the record fails to reveal progress in addressing the causes for the child's initial removal over five years later — a point highlighted by the appellate attorney for the child. Moreover, the mother refused to acknowledge the child's medical conditions and needs, claiming they were not a "problem" but essentially a product of too many therapists being involved in their lives. Considering the record in its entirety, and according deference to Family Court's factual findings and choice among dispositional alternatives, we discern no basis to disturb the conclusion that the mother failed to make meaningful progress in overcoming the barriers preventing reunification. Accordingly, termination of the mother's parental rights, rather than issuing a suspended judgment, served the best interests of the child (see Nevaeh N. [Heidi O.], 220 AD3d 1070, 1072-1073 [3d Dept 2023], lv denied 41 NY3d 903 [2024]; Matter of Jase M. [Holly N.], 190 AD3d at 1242; see also Matter of Macayla N. [Sheena N.], 240 AD3d at 982; Matter of Makayla I. [Sheena K.], 201 AD3d at 1152). We have examined the mother's remaining contentions and have found them to be unavailing.
Reynolds Fitzgerald, J.P., Ceresia, McShan and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Family Court concurrently determined that the father had also permanently neglected the child alongside the mother. Although the subsequent termination of his parental rights derived from the same order which the mother now appeals, the father has not appealed such order and, therefore, may not be granted any affirmative relief (see Matter of Drey L. [Katrina M.], 227 AD3d 1134, 1135 n [3d Dept 2024]). Accordingly, we consider the brief submitted by the father on this appeal to be limited to supporting the mother's contentions only.