Matter of L. XX. (V. WW.)

2026 NY Slip Op 02018

April 2, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of L. XX., Alleged to be an Abused and/or Neglected Child. Albany County Department for Children, Youth and Families, Respondent; V. WW., Appellant.

Decided and Entered:April 2, 2026

CV-25-0034

Calendar Date: February 19, 2026

Before: Garry, P.J., Clark, Pritzker, Mcshan And Corcoran, JJ.

Paul J. Connolly, Delmar, for appellant.

Jeffery V. Jamison, County Attorney, Albany (Nicole E. Coudari of counsel), for respondent.

Sandra M. Colatosti, Albany, attorney for the child.

[*1]

Corcoran, J.

Appeal from an order of the Family Court of Albany County (Jill Kehn, J.), entered November 26, 2024, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be abused and/or neglected.

Respondent (hereinafter the mother) is the mother of the subject child (born in 2007). Following receipt of a Statewide Central Register hotline report in September 2023 and an ensuing investigation, petitioner commenced this Family Ct Act article 10 proceeding alleging, among other things, that the mother facilitated or failed to prevent sexual abuse of the child by an unrelated adult household member and that she failed to adequately plan for the child's care after learning she was pregnant. After the child ran away from home to another state, she was placed in petitioner's custody with the mother's consent. Following a fact-finding hearing, Family Court determined that the mother abused and neglected the child. The mother appeals, and we affirm.

A person legally responsible for a child's care commits abuse when he or she "allows" a sex offense to be committed against such child (Family Ct Act § 1012 [e] [iii]; see Matter of Addilyn I. [Richard I.], 245 AD3d 1038, 1039 [3d Dept 2026]; Matter of Kaleb LL. [Bradley MM.], 218 AD3d 846, 848 [3d Dept 2023]).FN1 "Neglect is established when a preponderance of the evidence shows that the child[ ]'s physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and that the actual or threatened harm to the child[ ] results from the parent's failure to exercise a minimum degree of care in providing the child[ ] with proper supervision or guardianship" (Matter of Sariyah T. [Deidre R.], 238 AD3d 1253, 1254 [3d Dept 2025] [internal quotation marks and citations omitted]. "[E]ven a single incident of excessive corporal punishment can support a finding of neglect and actual physical injury is not required" (Matter of Jahkell SS. [Victoria SS.], 237 AD3d 1416, 1419 [3d Dept 2025] [internal quotation marks, ellipsis and citations omitted]; see Matter of Liam DD. [Jamie CC.], 244 AD3d 1625, 1627 [3d Dept 2025]). "[A]ny determination that the child is an abused or neglected child must be based on a preponderance of evidence" (Family Ct Act § 1046 [b] [i]). "Family Court's factual findings and credibility determinations are accorded great weight in such a proceeding and will not be disturbed on appeal unless they lack a sound and substantial basis in the record" (Matter of Addilyn I. [Richard I.], 245 AD3d at 1039 [internal quotation marks and citations omitted]).

The hearing evidence established that the child came to the United States with the mother in 2023. Upon their arrival, the family resided with the child's aunt, along with an unrelated 28-year-old male (hereinafter the adult male).FN2 In September 2023, petitioner's caseworker received a hotline report alleging that the adult male was sexually abusing the child[*2]. The mother informed the caseworker that he no longer resided in the home and she executed a written safety plan agreeing to prohibit his contact with the child. Despite these assurances, the child's high school social worker contacted the caseworker in October 2023 to report that the mother had attempted to sign her parental rights over to the adult male.

The caseworker, along with a forensic interviewer for the Albany Police Department, interviewed the child at school where she disclosed several instances of sexual abuse by two different men. The child said her mother encouraged her to "hug and kiss" another young adult male (a different individual than the 28-year-old male) who frequently visited her aunt's apartment. This man made repeated sexual advances toward the child and, ultimately, had sexual contact with her. The family then moved to a different apartment along with the adult male. The child reported that her mother encouraged her "to go sleep with" him and that she was aware they had a sexual relationship. The child told the caseworker that she and the adult male had intercourse three times, that she was pregnant, and that he was the father.

After disclosing her pregnancy to the mother, the child reported that the mother hit her in the face with a pan; she showed pictures of her injuries to the caseworker and the forensic interviewer. The mother told the adult male to move out of their apartment (an event that coincided with the caseworker's first contact with the household). The child claimed that the mother then entered into a "lease agreement," whereby the adult male would assume parental supervision of the child, and she showed the forensic interviewer and the caseworker a photograph of the purported "lease." Around the same time that the child was interviewed, the mother admitted to the caseworker that the adult male was again living with her family. Moreover, the mother conceded that she had "consider[ed]" relinquishing her parental rights to him because she could not afford to care for an additional child, i.e., her anticipated grandchild.

Later in October 2023, the caseworker received a second hotline report alleging that the child ran away to another state. The caseworker inquired whether the mother had a plan to retrieve the child, but her only response was that the other state was "far [away]." During the car ride back to Albany with a different caseworker, the child disclosed that she was three months pregnant with the adult male's child and that the mother told her she was no longer responsible for her because of the pregnancy.

Family Court determined that the mother abused the child by permitting, and at times encouraging, sexual contact with adult males, which resulted in the child's pregnancy. Family Court further determined that the mother neglected the child by failing to protect her from sexual abuse, refusing to care for the child when she learned of the pregnancy, neglecting to plan for the child after she was [*3]found in another state and using excessive corporal punishment.

Initially, the mother's contention that Family Court failed to provide adequate notice before conforming the petition to the proof about the alleged sexual abuse is belied by the record (compare Matter of Astilla BB. [Francis BB.], 233 AD3d 1309, 1312 [3d Dept 2024], lv dismissed 43 NY3d 948 [2025]; Matter of Alexander Z. [Melissa Z.], 129 AD3d 1160, 1162 [3d Dept 2015], lv denied 25 NY3d 914 [2015]; see Family Ct Act § 1051 [b]). Although the child alleged that she was subjected to a specific instance of sexual contact not included in the petition, Family Court did not rely upon that evidence as an independent basis for the abuse or neglect adjudications. Rather, Family Court's finding that the mother "encouraged [the child] to talk to adult men" was fairly implied by the petition's allegation that she "encouraged inappropriate intimate contact between" the child and the abuser. Nor is there merit to the mother's claim that Family Court relied upon an unpleaded theory of neglect, as the petition expressly alleged neglect based on the mother's failure to provide appropriate guardianship and supervision after learning of the child's pregnancy. Accordingly, the proof adduced at the fact-finding hearing supported theories of abuse and neglect that were fairly encompassed by the petition.

We next consider the mother's challenge to the caseworker's hearsay testimony repeating the school social worker's account of the mother's attempt to relinquish her parental rights to the adult male. Even assuming this testimony was improperly admitted, the same essential facts were established through the mother's own admission against interest to the caseworker that she considered assigning her parental rights (see Matter of M.G. [Marquise G.], 234 AD3d 575, 576 [1st Dept 2025]; Matter of Amara C. [Wanda C.], 206 AD3d 424, 424-425 [1st Dept 2022]; People v Finch, 160 AD3d 1212, 1214 [3d Dept 2018]), rendering any error harmless (see Matter of Zaiden P. [Ashley Q.], 211 AD3d 1348, 1355 n 5 [3d Dept 2022], lvs denied 39 NY3d 911 [2023], 39 NY3d 911 [2023]; Matter of Carmela H. [Danielle F.], 185 AD3d 1460, 1461 [4th Dept 2020], lv denied 35 NY3d 915 [2020]; Matter of Nicholas R. [Jason S.], 82 AD3d 1526, 1527 n [3d Dept 2011], lvs denied 17 NY3d 706 [2011], 17 NY3d 706 [2011]).

Finally, we reject the mother's contention that the abuse and neglect findings lack a sound and substantial basis in the record. She first argues that the testimony of caseworkers and the forensic interviewer, relaying the child's hearsay statements, was not sufficiently corroborated. In any hearing under Family Ct Act article 10, the out-of-court statements of a child relating to allegations of abuse are admissible but are insufficient to support a finding of neglect or abuse unless corroborated (see Family Ct Act § 1046 [a] [vi]; Matter of Emily RR. [Daniel QQ.], 244 AD3d 1630, 1633 [3d Dept 2025]). "The relatively low degree [*4]of required corroboration may be provided by any other evidence tending to support the reliability of the child's statements" (Matter of K.H. [J.H.], 241 AD3d 1640, 1642-1643 [3d Dept 2025] [internal quotation marks and citations omitted]; see Matter of Kalam EE. v Amber EE., 244 AD3d 1523, 1525 [3d Dept 2025]), and may include "medical indications of abuse, expert validation testimony, cross-corroboration by another child's similar statements, marked changes in a child's behavior, and sexual behavior or knowledge beyond a child's years" (Matter of A.T. [T.T.], 240 AD3d 950, 952 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied 44 NY3d 909 [2026]). "The sufficiency and reliability of the corroboration . . . are matters entrusted to the sound discretion of Family Court and will not be disturbed unless clearly unsupported by the record" (Matter of K.H. [J.H.], 241 AD3d at 1643 [internal quotation marks and citations omitted]).

It is undisputed that the 15-year-old child became pregnant after sexual intercourse with the 28-year-old male living at the family's apartment with the mother's knowledge; this evidence demonstrates sexual behavior beyond a child's years and tends to support the reliability of the child's allegation that the mother encouraged her to sleep with her abuser (see Matter of Nicole V., 71 NY2d 112, 119 [1987]; Matter of Taurice M. [Gregory A.], 147 AD3d 844, 844 [2d Dept 2017]). "Moreover, although the mere repetition of an accusation does not, by itself, provide sufficient corroboration, some degree of corroboration can be found where, as here, the out-of-court repetitions are consistent" (Matter of A.T. [T.T.], 240 AD3d at 952 [internal quotation marks, brackets and citations omitted]; see Matter of K.H. [J.H.], 241 AD3d at 1643; Matter of Kaleb LL. [Bradley MM.], 218 AD3d at 849). Under these circumstances, we conclude that the child's allegations of abuse and neglect were sufficiently corroborated.

The mother further asserts that her directive that the child "sleep with" an adult could be construed in a nonsexual manner, that the absence of documentary proof undermines the child's allegation that she was struck with a pan and that the record fails to establish the mother's ability to retrieve the child from the other state. These contentions challenge the weight and interpretation of the evidence, matters entrusted to Family Court's discretion, to which we accord great deference on appeal (see Matter of Addilyn I. [Richard I.], 245 AD3d at 1039; Matter of Brian Q. v Allysa R., 244 AD3d 1328, 1329 [3d Dept 2025]). Upon our independent review of the record, and deferring to Family Court's credibility determinations including that the mother's failure to testify supported the strongest possible inference against her (see Matter of Sariyah T. [Deidre R.],238 AD3d at 1256), a sound and substantial basis exists to support Family Court's findings that the mother abused and neglected the child.

Garry, P.J., [*5]Clark, Pritzker and McShan, JJ., concur.

ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: As relevant here, a person 21 years old or older who engages in sexual intercourse with another person less than 17 years old commits rape in the third degree (see Penal Law § 130.25 [4]). The victim's lack of consent is an element of every offense defined in Penal Law article 130, and a person less than 17 years old is incapable of granting consent (see Penal Law § 130.05 [1], [2] [b]; [3] [a]).

Footnote 2: The hearing did not establish the nature of the relationship, if any, between the 28-year-old male and the child's aunt, nor did it otherwise demonstrate his relationship with the child's family.